IN THE MATTER OF: A.P., MINOR CHILD

No. COA05-565

(Filed 5 September 2006)

**Child Abuse and Neglect— continuing custody with DSS—not an appealable final order**

A custody review order continuing custody of a child with DSS (with placement with the biological father sanctioned) was not an appealable final order as contemplated by N.C.G.S. § 7B-1001, and the mother's appeal was dismissed.

Judge LEVINSON concurring.

Appeal by respondent-mother from order entered 17 March 2004 by Judge Denise S. Hartsfield in Forsyth County District Court. Heard in the Court of Appeals 18 April 2006.

## IN RE A.P.

[179 N.C. App. 420 (2006)]

*Katharine Chester for appellant respondent-mother.*

*Robert T. Newman for appellee respondent-legal father.*

*Gary C. Rhodes for appellee respondent-biological father.*

ELMORE, Judge.

This case arises from a custody dispute between A.P.'s mother (respondent), the Forsyth County Department of Social Services (DSS), and A.P.'s biological father, William. For the reasons stated herein, we dismiss respondent's appeal.

On 7 November 2003 DSS filed a petition alleging: 1) that A.P. was a neglected and dependent juvenile, and 2) that immediate non-secure custody by DSS was needed to protect A.P. DSS filed the petition after their initial intervention into A.P.'s life failed to rectify the circumstances needing attention. DSS had received numerous reports that A.P. was living in an environment injurious to her welfare because her mother and legal father, respondent and Roy, were using drugs, fighting at home, stealing from local merchants, and were not properly caring for A.P. Respondent consented to the placement of A.P. with DSS and at the 9 January 2004 hearing on neglect and dependency did not oppose the allegations in the petition.

As such, the district court granted custody of A.P. to DSS with placement to be "at the discretion of that Agency." A reunification plan was set, and supervised visitation was ordered for all parties. Further, the district court ordered that:

> 6. William [D.H.] shall comply with the homestudy in Surry County as scheduled by the Department of Social Services for possible placement of [A.P.]

> 7. The Forsyth County Department of Social Services shall make all necessary investigations as to William [H.'s] suitability to parent [A.P.]

> . . .

> 9. This matter shall be reviewed on **February 18, 2004 at 11:45 a.m.,** or on prior motion of any of the parties.

Prior to this time, respondent informed DSS that William [D.H.] (William) was likely A.P.'s biological father, not Roy as she had indicated to everyone at A.P.'s birth. DSS located William in Surry County, and he had previously been ordered to submit to a paternity test along

with Roy. William was proven to be A.P.'s biological father and, as such, began legitimization proceedings. Once he determined that A.P. was his, he expressed strong interest in raising A.P. and being a part of her life.

At the 18 February 2004 review hearing the district court ordered custody to remain with DSS and sanctioned A.P.'s placement with her biological father William.

> 1. Legal custody of [A.P.] shall remain with Forsyth County Department of Social Services and her placement shall be at the discretion of that Agency.

> 2. The Court sanctions the placement of [A.P.] in the home of her biological father, William [D.H.] in Surry County. Forsyth County DSS is to monitor the placement and provide a written report to all counsel prior to the next hearing in compliance with the local rules.

Respondent filed notice of appeal from that order.

Respondent's order, however, is not a dispositional order from which appeal can be taken. *See In re C.L.S.*, 175 N.C. App. 240, 623 S.E.2d 61 (2005); *In re B.N.H.*, 170 N.C. App. 157, 611 S.E.2d 888, *disc. review denied*, 359 N.C. 632, 615 S.E.2d 865 (2005). The order arising from the 9 January 2004 hearing gave custody of A.P. to DSS and gave DSS the discretion to place A.P. where it saw fit. Presumptively, according to the district court's order, this included placing A.P. with William pending an appropriate conclusion from his home study. The 17 March 2004 order arising from the 18 February 2004 hearing does not change that.

> Unlike the order in *In re Weiler*, [158 N.C. App. 473, 581 S.E.2d 134 (2003),] where the actual order appealed from changed the status quo of the relationship between the parents and the minor, here there is no change in the status quo. Custody of the minor was given to DSS by a previous order, thus the order appealed from did not alter the disposition of the child.

*In re C.L.S.*, 175 N.C. App. at 242, 623 S.E.2d at 63. As such, it is not an appealable order pursuant to N.C. Gen. Stat. § 7B-1001 (2003). *See In re B.N.H.*, 170 N.C. App. at 161-62, 611 S.E.2d at 891 (holding that orders where the court merely continues directive changes issued in previous orders are not immediately appealable). Because the 17 March 2004 order of the district court continuing custody with DSS is

**IN RE A.P.**

[179 N.C. App. 420 (2006)]

not an appealable final order as contemplated by N.C. Gen. Stat. § 7B-1001, we dismiss respondent's appeal.

Dismissed.

Judge WYNN concurs.

Judge LEVINSON concurs by separate opinion.

LEVINSON, Judge concurring with separate opinion.

I write to clarify my reasons for dismissing this appeal.

The majority opinion relies heavily upon this Court's discussions in *In re Weiler*, 158 N.C. App. 473, 581 S.E.2d 134 (2003), and *In re BNH*, 170 N.C. App. 157, 611 S.E.2d 888, *disc. review denied*, 359 N.C. 632, 615 S.E.2d 865 (2005), to explain why the custody review order on appeal is not immediately appealable pursuant to N.C. Gen. Stat. § 7B-1001.[1] *Weiler* and *BNH* concerned appeals of permanency planning orders. The majority essentially holds that, because there have not been any changes in custody since the order next-preceding the custody review order on appeal, it is not immediately appealable. In my view, no custody review order entered pursuant to N.C. Gen. Stat. § 7B-906 is immediately appealable as a matter of right pursuant to Subsection 3 of G.S. § 7B-1001(a).

A close reading of *BNH* reveals that (1) custody review orders, permanency planning orders, and other miscellaneous juvenile orders are not "dispositional" orders as contemplated by G.S. § 7B-1001 (a)(3)—and that the order of disposition after an adjudication language contained in G.S. § 7B-1001(3) refers to orders entered after an adjudication that a child is neglected, abused or dependent pursuant to N.C. Gen. Stat. § 7B-905; and (2) *Weiler* would be limited to its specific facts—that permanency planning orders that change an existing permanent plan from reunification to adoption are immediately appealable.[2]

The current order on appeal does not fall within any of the provisions for appellate review by right contained in the former version of

---

1. The order on appeal implicates the former version of G.S. § 7B-1001. The new version became effective October 1, 2005, and is applicable to all petitions or actions filed on or after that date. All of my comments in this concurring opinion concern the former version of the statute.

2. *BNH* and *Weiler* were published by this Court before the amended version of G.S. § 7B-1001 became law.

**IN RE A.P.**

[179 N.C. App. 420 (2006)]

G.S. § 7B-1001: the order does not find an absence of jurisdiction; does not, in effect, determine the action and prevent a judgment from which an appeal might be taken; is not an order of disposition after an adjudication that the child is abused, neglected or dependent (for the reasons set forth in detail in *BNH*); and is not an order that changes custody. For all these reasons, there is no right of appeal from the 17 March 2004 custody review order on appeal.

In my view, no custody review order entered pursuant to G.S. § 7B-906 falls within Subsection 3 of G.S. § 7B-1001(a). And it is my view that this Court is obligated to accept for appellate review under G.S. § 7B-1001 (a)(3) only those permanency planning orders that mirror the specific circumstances in *Weiler*. This appeal reveals a disagreement by mother of the trial court's decision to sanction the placement of the child with father should Social Services exercise its discretion to do so. This is a juvenile matter that first and foremost concerns the child; it is captioned *In re* for a reason. It is a proceeding concerning the circumstances surrounding the child—the child's status as abused, neglected and/or dependent that implicate the involvement of the juvenile court. The differences between Chapter 50 custody disputes and Chapter 7B proceedings are too numerous to enumerate here. While mother has a right to be heard with respect to where the court places A.P., this is a juvenile matter that was initiated by Social Services and concerns this juvenile's status and circumstances. The juvenile court is vested with wide discretion at a required series of hearings to make a number of decisions about where to place the child; what requirements, if any, to place on the caretaker(s) and/or parents; what might be done to further the permanency goals for the child; and a host of other requirements. Making a custody placement is only one of many decisions confronting the juvenile court at all of these hearings. Where frequent appeals are taken in juvenile matters, permanency and finality cannot be obtained.

By adopting the language it did in G.S. § 7B-1001, the General Assembly thoughtfully precluded individuals from obstructing the permanency requirements needed by juveniles who are within the jurisdiction of our courts. By adopting the language it did in G.S. § 7B-1001, the General Assembly protected the rights and interests of parents by allowing them appeals as a matter of right at particular junctures in a juvenile matter. And by adopting the language it did in G.S. § 7B-1001, the General Assembly necessarily recognized the truism that some intermediate decisions by the juvenile court will evade appellate review as a matter of right.

**IN RE A.P.**

[179 N.C. App. 425 (2006)]

This appeal, like so many others I have seen, has done nothing to further the real interests and needs of the juvenile or the mother who appealed. Allowing the parents, the juvenile, the trial court, and this Court to expend the time and energy associated with this appeal—and allowing everyone involved to wait on absolutely nothing—are the only obvious errors appearing on this record.